UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INFECTION PROTECTION TECHNOLOGIES, LLC

Plaintiff,

v.

UVAS, LLC, and LUMALIER CORPORATION,

Defendants.
_______________________________________/

CASE NUMBER: 10-12371

HONORABLE VICTORIA A. ROBERTS

MAGISTRATE JUDGE LAURIE MICHELSON

**ORDER**

# I. INTRODUCTION

This matter is before the Court on Plaintiff Infection Prevention Technologies, LLC's (IPT), and Defendant Lumalier Corporation's (Lumalier) objections to the Magistrate's Report & Recommendation (R&R) on Defendants' Motions to Dismiss (Doc. 11, 14). Defendant UVAS, LLC (UVAS) did not file objections to the R&R. Defendants' motions were referred to Magistrate Judge Laurie J. Michelson for an R&R pursuant to 28 U.S.C. § 636(b)(1)(B).

The Court **ADOPTS** Magistrate Michelson's recommendations with slight **MODIFICATION**. The modifications are as follows: (1) The Court finds that IPT sufficiently pled damages in Counts IV, V, and VI and that there is no need to amend with respect to damages; and (2) with respect to the deficiencies Magistrate Michelson found in Counts IV-VI, IPT can file an amended complaint within fifteen days of this Order. A motion to amend is not required.

## II. BACKGROUND

### A. Summary of Facts

UVAS (defendant-patentee) is a three-person South Carolina LLC that holds three patents–the ’424, ’177 and ’ 806 patents–relating to the use of light in sterilizing hospital rooms. Jeffrey Deal, M.D., is the inventor of the technology and managing member of UVAS. UVAS has no employees or physical presence in Michigan, is not registered to do business in Michigan, and does not manufacture, market, or sell products in Michigan.

Lumalier (defendant-licensee) is a Tennessee corporation involved in the ultraviolet disinfection business that, by way of a license agreement with UVAS, has the exclusive right to exploit the ’424 and ’177 patents. Lumalier has no offices in Michigan but does conduct business in Michigan.

IPT is a nine-member Michigan LLC that manufactures and sells devices that compete with Lumalier’s.

In May 2009, IPT and UVAS discussed the possibility of a licensing agreement and exchanged drafts but did not ultimately execute an agreement. Instead, on June 30, 2009, UVAS entered into an exclusive license agreement with Lumalier. On July 2, 2009, Dr. Deal informed IPT that UVAS had entered into a license agreement with Lumalier and that any agreement between UVAS and IPT would require Lumalier’s cooperation. According to IPT, Lumalier informed IPT that it could not enter into a license agreement with UVAS.

A series of exchanges between IPT and UVAS followed. On July 30, 2009,

Thomas Kenny of IPT wrote to UVAS about IPT's plans to release a product that competed with the technology covered by the patents held by UVAS but which IPT claimed did not infringe those patents. Dr. Deal responded that he would forward the email to UVAS's attorney for comment. After writing a follow-up letter on August 25, 2009, IPT did not hear anything further from UVAS and allegedly spent significant resources developing its competing sanitation product. Then, on March 18, 2010, counsel for UVAS sent a letter to IPT requesting a detailed description of IPT's competing device, and reasons why the device did not infringe UVAS's patents. IPT responded that it was confident its device did not infringe the patents, and referred counsel to its website for an explanation of the product.

IPT argues that Lumalier and/or Jeffrey Deal then undertook a course of conduct designed to unlawfully interfere with IPT’s business. IPT alleges that in April and May of 2010, Dr. Deal and/or Lumalier contacted at least three hospitals that were potential customers of IPT and falsely informed them that IPT's product infringed Lumalier's patents; that IPT's product required a license; that complaints had been made to the U.S. Food and Drug Administration about IPT; and that IPT had published false statements. IPT claims that these statements were false and that they interfered with its business.

**B. Procedural History**

IPT sued UVAS as patentee and Lumalier as licensee for a declaratory judgment that IPT’s product does not infringe UVAS’s three patents, the basis of Counts I-III of the Complaint. IPT also brought claims of tortious interference with business relations (Count IV); injurious falsehood, slander, and/or defamation (Count V); and a Lanham

Act false advertising claim (Count VI) against both defendants. Both defendants then moved to dismiss the Complaint.

In its Motion to Dismiss, UVAS argued: (1) that this Court cannot exercise personal jurisdiction over it; (2) that no justiciable case or controversy exists between itself and IPT; (3) that IPT failed to adequately plead a false advertising claim under the Lanham Act; and (4) that IPT's state law claims are pre-empted. In the alternative, UVAS asked the Court to transfer the case to the United States District Court for South Carolina. Lumalier, in its Motion to Dismiss, made the same arguments as UVAS with the exception that it did not contest personal jurisdiction, instead arguing that because this Court lacks personal jurisdiction over UVAS, and because UVAS is an indispensable party, IPT's Complaint against Lumalier must be dismissed.

**C. Recommendations of Magistrate Michelson**

On July 25, 2011, Magistrate Michelson issued a report with the following recommendations:

(1) that IPT's Complaint against UVAS be dismissed without prejudice because this Court cannot exercise personal jurisdiction over UVAS;

(2) that Count III, seeking a declaratory judgment of non-infringement of the '806, patent be dismissed without prejudice as to both Defendants because UVAS is a necessary and indispensable party with regard to that count;

(3) that IPT file a motion to amend Counts IV, V, and VI within 30 days of the R&R's adoption, and that, if the motion to amend is denied, Counts IV and V of the Complaint insofar as they are premised on allegedly false statements of patent infringement, and Count VI, be dismissed with prejudice as against

Lumalier.

**D. IPT's and Lumalier's Objections**

IPT and Lumalier filed timely objections to Magistrate Michelson's R&R. IPT specifically objected to the Magistrate's finding that this Court cannot exercise specific personal jurisdiction over UVAS. Lumalier specifically objected to the Magistrate's findings that: (1) IPT had adequately pled damages in support of Counts IV, V, and VI of its Complaint; (2) IPT's claims in Counts IV, V, and VI of the Complaint should be preserved to the extent that those counts are not premised on allegedly false statements of patent infringement; and (3) that IPT should be given the opportunity to amend its Complaint with respect to counts IV, V, and VI should the Court adopt the R&R.

The Court considers each of these objections, in turn, in Section IV below.

**III. STANDARD OF REVIEW**

Where a dispositive pretrial matter has been referred to a magistrate judge for a report and recommendation, the district judge reviews de novo any portion of the magistrate judge's report and recommendation to which the parties specifically objected. Fed. R. Civ. P. 72(b). If the court accepts the report and recommendation, it is not required to specify the reasons why it rejects a party's objections. U.S. v. Tyson, 265 F. Supp. 2d 788 (E.D. Mich. 2003). Rather, it is sufficient for the Court to say that it engaged in de novo review of the record and adopts the report and recommendations. *U.S. v. Robinson*, 366 F. Supp. 2d 498 (E.D. Mich 2005).

## IV. ANALYSIS

### A. This Court Cannot Exercise Personal Jurisdiction Over UVAS

IPT objects to the R&R's determination that the "other activities" of UVAS directed toward Michigan besides sending an infringement letter there are insufficient to make this Court's exercise of personal jurisdiction over UVAS reasonable and fair. IPT asserts that the R&R improperly focuses on the ability of UVAS, as patentee, to continue to enforce its patent rights after exclusively licensing its patents to Lumalier. IPT argues that the Magistrate failed to give due weight in the jurisdictional analysis to other activities unrelated to patent enforcement, such as the fact that UVAS entered into an exclusive license with Lumalier, a company that conducts business in Michigan; that UVAS agreed to cooperate with Lumalier in legal process by making available its employees, records, and other information; and that UVAS engaged in marketing activity directed against IPT, a Michigan company. In short, IPT believes that the Magistrate erred in holding that the right of a patentee to initiate a patent lawsuit, rather than cooperation with the licensee and participation in marketing, is the focus of the jurisdictional enquiry.

In support of its position, IPT argues that the facts in this case are indistinguishable from those in *Breckenridge Pharmaceuticals, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006), where the Federal Circuit held that the district court properly exercised jurisdiction over an out-of-state patentee whose exclusive licensee was subject to jurisdiction in the forum. The Court disagrees. In *Breckenridge*, the parties agreed to "cooperate reasonably in any enforcement actions," and the licensee needed the patentee's permission to initiate suit. *Id*. at 1366-67. Here,

as the R&R notes, the exclusive license agreement does not grant UVAS the right to enforce the ’424 and ’177 patents, and in the very limited instance in which UVAS may do so if Lumalier fails to defend a declaratory judgment action, UVAS’s enforcement rights are purely permissive. In addition, the patentee in *Breckenridge* agreed to provide consultation in science, medicine and marketing to the licensee, *id.* at 1367, whereas the license agreement in this case indicates that promotion would be carried out at Lumalier’s “sole discretion.” (Lumalier’s Reply, Ex. G, Amended License § 5.1).

IPT argues that the Court must also take into account the ongoing relationship between UVAS and Lumalier unrelated to enforcement activities. IPT points out that Jeffrey Deal served a dual role as managing member of UVAS and Chief Science Officer for Lumalier, and that Deal engaged in marketing activities directed against IPT. Post-*Breckenridge* case law, however, makes clear that the crux of the jurisdictional inquiry is the ability of the patentee to enforce its patent rights in the forum. *See Avocent Huntsville Corp. v. Aten Intl.*, 552 F.3d 1324, 1335 (Fed. Cir. 2009) ("[E]xclusive license agreements and other undertakings that impose enforcement obligations on a patentee or its licensee reflect the kind of "other activities" that support specific personal jurisdiction in a declaratory judgment action..."); *Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009)(“[O]nly enforcement or defense efforts related to the patent rather than the patentee’s own commercialization efforts are to be considered for establishing specific jurisdiction in a declaratory judgment action against the patentee.”). Thus, although some ongoing relationship seemed to exist between UVAS and Lumalier, the R&R correctly determined that it was not the type of relationship that the case law requires for an exercise of personal

jurisdiction over UVAS; namely, UVAS did not retain patent enforcement rights.

In its objections, IPT cites *Calder v. Jones*, 465 U.S. 783 (1984) for the first time for the proposition that jurisdiction can be proper when based on the "intentional conduct [by Defendant] calculated to cause injury [to Plaintiffs]," the so-called effects test. This argument is without merit in this context, as explained by a recent analogous case in the Eastern District of Michigan: "The Federal Circuit previously addressed this argument in *Breckenridge* and again in *Avocent*. (citations omitted). In both of those cases, the Federal Circuit found this argument unavailing because the 'letters would neither be unjustifiable nor unfair if the implication of infringement contained therein is true.' *Id*. Likewise, the Court finds that Defendant's letters to Plaintiff's customers in this case did not create personal jurisdiction over the Defendant under *Calder*, because the claimed infringement in Defendant's letters may not be unjustifiable or unfair." *Shrader Electronics, Ltd. V. Sentech, Inc.*, No. 10-cv-13127, 2011 WL 97118 (E.D. Mich. 2011).

IPT's final two arguments, that the Magistrate should not have considered the Amended License produced by UVAS for the first time in its Reply Brief, and that it should be able to probe the relationship between UVAS and Lumalier through jurisdictional discovery, are similarly without merit. As UVAS points out on pp. 16-18 of its Response in Opposition to Plaintiff's Objection to the R&R (Doc. 30), IPT placed the contents of the license agreement at issue for the first time in its Opposition to Defendant's Motion to Dismiss (Doc. 17). Fairness dictates that UVAS be permitted to produce the agreement in response in its Reply Brief. Regarding IPT's request for jurisdictional discovery, the Court believes that it has before it all that it needs to decide the jurisdictional issue at this stage. The case law above makes clear that the ability of

the patentee to exercise enforcement activities is the crux of the jurisdictional inquiry. The Amended License before the Court does not grant IPT such authority. Jurisdictional discovery will not alter this determinative fact.

Accordingly, the Court adopts the R&R's recommendation to dismiss the claims against UVAS for lack of specific personal jurisdiction.

**B. IPT Has Adequately Pled Damages In Counts IV, V, and VI**

Lumalier objects to the R&R's finding that IPT adequately pled damages, stating, "Plaintiff has not recited one contract that was breached, or even one *potential* contract that was not consummated, in connection with the allegations against Defendants. Plaintiff has done no more than insert bare labels and conclusions that it has been damaged, and thus Plaintiff has not met it's burden under *Twombly*." This Court disagrees.

The Magistrate correctly notes that a plaintiff must plead sufficient facts to state a claim that is "plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and that bare legal conclusions do not withstand a motion to dismiss. *Ashcroft v. Iqbal*, ___ U.S.___, 129 S.Ct. 1937 (2009). The factual allegations must raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. In determining whether a complaint meets the plausibility standard, a court is allowed to draw reasonable inferences based on the facts plead. *Iqbal*, 129 S.Ct. at 1949.

Here, IPT met its burden for surviving a motion to dismiss. The Background section of IPT's Complaint contains facts that allow the Court to draw reasonable inferences that it sustained damages. IPT states that Lumalier made false and misleading statements to potential customers and wrongly accused IPT of false

advertising. Since these statements were made to potential customers, the Court can reasonably infer that the potential customers were influenced by these statements and that IPT was damaged. The facts pled raise a right to relief that is above the speculative level, as required by *Twombly*.

IPT has adequately pled damages and need not amend its Complaint in this regard.

**C. The Court Adopts the Magistrate's Recommendation to Preserve Claims IV, V, and VI of the Complaint to the Extent Those Statements Are Not Based on Allegedly False Statements of Patent Infringement**

The Magistrate correctly determined that the Patent Act added a bad faith element to the causes of action pled in Counts IV, V, and VI and that the Complaint failed to plead bad faith. However, the Magistrate also found that to the extent those claims do not relate to patent infringement, the claims should be preserved because bad faith is not a required element under those circumstances. Lumalier did not object to the Magistrate's findings that IPT failed to plead bad faith; rather, Lumalier objected to the preservation of these claims to the extent they do not relate to patent infringement. After conducting *de novo* review, this Court finds the Magistrate's report well-reasoned and adopts its recommendation to preserve the claims to the extent they do not relate to patent infringement.

Lumalier's specific objection is that the statement cited by the Magistrate in the R&R, that Lumalier "also falsely asserted that IPT made 'false claim[s] in its advertising'" could not be the basis of Counts IV, V, or VI because it alone does not state a claim upon which relief could be granted. In particular, Lumalier argues that it does not state

a claim as to Count IV, tortious interference, or Count V, injurious falsehood, defamation, or slander because IPT failed to allege damages that followed from the statement. As to Count VI, Lumalier argues that the statement does not meet the statutory requirements for relief under the Lanham Act.

Contrary to Lumalier's assertions, Counts IV, V, and VI are not based on one single alleged statement, but rather a number of statements set forth in the Complaint. These statements, taken as a whole, form the factual bases for Counts IV-VI. The same set of facts supports IPT's causes of action for the claims that require bad faith and those that do not. Therefore, as to Counts IV and V, the Court has already decided that IPT adequately pled damages; no additional showing is required. With regard to Count VI, the Magistrate found, and Lumalier did not object, that the Complaint adequately pled the "tendency to deceive a substantial segment of the intended audience" prong of a Lanham Act violation. IPT will be given leave to amend to correct deficiencies in the "commercial advertising" prong, as explained below. No additional showing is required.

IPT's objections are overruled and the Court adopts the Magistrate's R&R to preserve claims IV-VI to the extent those claims are not based on allegedly false statements of patent infringement.

**D. IPT is Granted Leave to Amend Its Complaint**

Lumalier argues that the Court should dismiss the deficient claims outright, but it cites no authority in support of this proposition. The Magistrate correctly noted that there are facts in the record which indicate that amendment would not be futile, so granting leave to amend is an appropriate exercise of the Court's discretion in this case.

IPT is granted leave to file an amended complaint within fifteen days of this order. To the extent the same facts support a different or different causes of action, the counts should each be separated with separate numbered headings and separate numbered paragraphs. Thus, the counts related to patent infringement should be separated from the counts unrelated to patent infringement, even if the separate counts are supported by the same facts.

The Court declines to direct what IPT must allege to establish bad faith, and notes that Footnote 14 of the R&R does not purport to conclusively decide the issue. IPT is free to allege bad faith as it deems proper in its amended complaint.

## V. CONCLUSION

The Court **ADOPTS** Magistrate Michelson's R&R with **MODIFICATION**. The modifications are solely that: (1) IPT adequately pled damages in Counts IV-VI and that no amendment is required as to damages; and (2) that IPT is granted leave to amend its Complaint without motion.

**IT IS ORDERED.** IPT must submit an amended complaint on or before October 4, 2011.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 19, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 19, 2011.

s/Carol A. Pinegar
Deputy Clerk